1  Robert Rowen, *pro se* &
   Teresa Su, *pro se*
2  321 South Main Street #537
   Sebastapol, California 95472
3  Phone: (707) 328-3012

4

5              UNITED STATES DISTRICT COURT FOR THE
                NORTHERN DISTRICT OF CALIFORNIA

6  In the Matter of the Tax Indebtedness of   :      Case No. CV 14-80-086 MISC
                                              :
7  Robert Rowen and Teresa  Su,               :
          *Business Address*:                 :
8         2200 County Center Drive            :
          Santa Rosa, CA 95403                :
9                                             :
          *Home Address:*                     :
10        7048 E. Hurlbut Ave.                :
          Sebastopol, CA 95472                :
11                                            :
   Ex Parte UNITED STATES OF AMERICA :
12 and Revenue Officer DAVID BARBEARO, :
                                              :
13        Applicants for Order.               :
   _____:

14

15      MOTION TO VACATE THE COURT'S ORDER OBTAINED BY FRAUD
        PERPETRATED ON THIS COURT BY OFFICERS OF THIS COURT

16           COMES NOW Petitioners Robert Rowen and Teresa Su, (hereinafter Mr. Rowen

17  and Ms. Su,) by leave of court pro se, and submits Mr. Rowen's and Ms. Su's Motion to

18  Vacate the Court's Order Obtained by Fraud Perpetrated on this Court by Officers of

19  this Court.  In support of this motion Mr. Rowen and Ms. Su would state as follows:

20           1.  The Honorable Nathanael M. Cousins, United States Magistrate Judge signed

21  a "(Proposed) Order Granting United States Amended Application for Order Authorizing

22

23

24

MOTION TO VACATE THE COURT'S ORDER OBTAINED BY FRAUD                    PAGE 1 OF 1

Entry Onto Premises to Effect Levy."[1] The title of the order appears to indicate previous applications may have been denied or rejected, requiring amendment of the application.

2.  The purpose of the order appears to have been stated as, "for the purpose of searching for, levying upon, and seizing gold and silver coins, and cash and cash equivalents, with a value no greater than, and in order to apply those assets to the federal income tax liabilities (plus statutory additions) of Robert Rowen for tax years 1992 through 1997, the Civil Penalty liability of Robert for tax year 2002, and the income tax liability (plus statutory additions) of Teresa Su for tax year 2002, as further described in "Declaration of Revenue Officer David Barbearo in Support of Amended Application for Order Authorizing Entry onto Premises to Effect Levy ("Barbearo Declaration")."

## <u>THE COURT'S ORDER WAS THE FRUIT OF AN INTENTIONAL FRAUD<br>PERPETRATED ON THIS COURT BY OFFICERS OF THIS COURT</u>

3.  The Court's Order was the fruit of an intentional fraud perpetrated on this Court by officers of this Court, as an act in furtherance of the conspiracy by Revenue Officer David Barbearo, and others, devised as "an unconscionable plan or scheme designed to improperly influence the court in its decisions," that defiled the court and undermined the integrity of the judicial process.

4.  The officers of this Court, licensed to practice before this Court, knew at the time the application was made, that Revenue Officer David Barbearo was prohibited from making application for an Order Authorizing Entry Onto Premises to Effect Levy, because the Officers of this Court knew that Revenue Officer David Barbearo had intentionally violated the specific mandates prohibiting the levy and seizure:

---

[1] See the copy of the proposed order attached hereto as an Exhibit.

Requirements were mandated to be completed and approval levels for seizures were required before the application was made to court for the Sealed Court Order.[2]

Requirements were not completed and approvals were not obtained.[3]

IRS 5.10.1.3  (12-13-2005)  Actions Required <u>Prior to Seizure</u> by IRC 6331(j):

**<u>(j) No levy before investigation of status of property</u>**

**(1) In general**

For purposes of applying the provisions of this subchapter, **no levy may be made on any property or right to property which is to be sold under Section 6335  until a thorough investigation of the status of such property has been completed.**

**(2) Elements in investigation**

For purposes of paragraph (1), an investigation of the status of any property shall include—

**(A) <u>a verification of the taxpayer's liability;</u>**

Revenue Officer David Barbearo admitted that he knew that Ms. Su's and Mr. Rowen's income tax returns had not yet completed being processed, and that there is active litigation in this (CAND) court concerning tax liability which should have been revealed to this court; that their income tax returns had the potential of affecting any potential liability. Therefore, the taxpayers' liability could not be verified; that after completion of the processing of Ms. Su's and Mr. Rowen's income tax returns and their casualty loss, they would be entitled to a substantial refund, and would owe no tax for the years covered by the income tax returns for the years 2001-2009..

**(B) <u>the completion of an analysis under subsection (f);</u>[4]**

---

[2] RRA 98 §§ 3401(b) and 3421. No levy may be made on any property if the amount of the expenses which the Secretary estimates (at the time of levy) would be incurred by the Secretary with respect to the levy and sale of such property exceeds the fair market value of such property at the time of levy.
[3] All collection seizures will require a minimum approval level of the Territory Manager.  Approval must be written. A Revenue Officer must complete an extensive checklist and submit the entire case file to management when proposing a seizure. [IRM 5.10.1.3]
[4] (f) Uneconomical levy
No levy may be made on any property if the amount of the expenses which the Secretary estimates (at the time of levy) would be incurred by the Secretary with respect to the levy and sale of such property exceeds the fair market value of such property at the time of levy.

MOTION TO VACATE THE COURT'S ORDER OBTAINED BY FRAUD                    PAGE 3 OF 3

1
2
3
4
5
6
7

Revenue Officer David Barbearo must admit that he knew that no complete analysis had been made under subsection (f), because after completion of the processing of Ms. Su's and Mr. Rowen's income tax returns and their casualty loss, they would be entitled to a substantial refund, and would owe no tax for the years covered by the income tax returns 2001-2009.  Therefore, since they would owe no tax and be entitled to a substantial refund, the entirety of the amount of the expenses which the Secretary estimates (at the time of levy) would be incurred by the Secretary with respect to the levy and sale of such property, would have to be paid by the Secretary, and could not be charged against Ms. Su and Mr. Rowen, and in addition, the Secretary would also be liable for a wrongful levy and unlawful search and seizure of the property wrongfully seized, and the wrongly seized property would have to be returned by the Secretary.

8
9

**(C) <u>the determination that the equity in such property is sufficient to yield net proceeds from the sale of such property to apply to such liability; and</u>**

10
11
12
13
14
15

Revenue Officer David Barbearo must admit that he knew that no determination that the equity in such property was sufficient to yield net proceeds from the sale of such property to apply to such liability, because Revenue Officer David Barbearo must admit that he knew that Ms. Su's and Mr. Rowen's income tax returns had not yet completed being processed, that litigation in pending in USDC CAND court regarding tax liability, which he did not reveal to this court; that their income tax returns had the potential of affecting any potential liability, therefore, their taxpayer's liability could not be verified; that after completion of the processing of Ms. Su's and Mr. Rowen's income tax returns and their casualty loss, they would be entitled to a substantial refund, and would owe no tax for the years covered by the income tax returns 2001-2009.

16
17
18
19

Revenue Officer David Barbearo knew that Ms. Su was not liable for the previous debts of Mr. Rowen from before her marriage. Revenue Officer David Barbearo filed a lien against both Mr. Rowen and Ms. Su naming Mr. Rowen's tax debts from the 1990s.  When Ms. Su sent Revenue Officer David Barbearo a letter informing him that she could not be liable for her husband's debts prior to their marriage, he removed Ms. Su's name from the tax lien.  This is proof that Revenue Officer David Barbearo knew at the time he made the application for the sealed order that Ms. Su was not liable for Mr. Rowen's tax debts before her marriage.

20
21
22
23

Revenue Officer David Barbearo must also admit that he knew that the entire property that he was unlawfully searching for and seizing belonged to Ms. Su before her marriage to Mr. Rowen, and he knew that after completion of the processing of Ms. Su's and Mr. Rowen's income tax returns and their casualty loss, they would be entitled to a substantial refund, and would owe no tax for the years covered by the income tax returns 2001-2009.

24

Revenue Officer David Barbearo must also admit that Ms. Su and Mr. Rowen had a pre-nup and that all of the property seized belonged to Ms. Su before her marriage to Mr. Rowen, including her family heirlooms; and he knew that she was not liable for Mr. Rowen's debts before their marriage. Therefore, Mr. Rowen had no equity in any of the property unlawfully seized from Ms. Su and from Ms. Su's personal residence and her business offices. In addition, he knew that Ms. Su owed no taxes and was entitled to a substantial refund, after completion of the processing of her income tax returns, and the casualty loss.

**(k) No levy while certain offers pending or installment agreement pending or in effect**

**(1) Offer-in-compromise pending**

**No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax—**

**(A) during the period that an offer-in-compromise by such person under section 7122 of such unpaid tax is pending with the Secretary;**

Revenue Officer David Barbearo must admit that he knew that an offer-in-compromise had been made, before the seizure, in writing by Ms. Su. And he knew that the offer was returned (not refused) by the IRS with a statement that her return was being evaluated for processibility and they could not consider her offer in compromise at the time. The return of the offer also stated that there was a pending investigation on the SFR that led to the assessment. Revenue Officer David Barbearo must admit that he knew that the offer in compromise was returned for these reasons. It had been returned because it could not be accepted or considered because the IRS was reviewing her 2002 income tax return for processibility as well as an investigation on the SFR.

**(B) if such offer is rejected by the Secretary, during the 30 days thereafter (and, if an appeal of such rejection is filed within such 30 days, during the period that such appeal is pending).**

Revenue Officer David Barbearo must admit that he knew that the time had not expired for filing an appeal of any unfavorable decision of the offer-in-compromise. There was no unfavorable decision. The offer was returned because the IRS was unable to consider the offer at the time because her 2002 return was being evaluated for processibility and there was an investigation regarding the IRS's own SFR that led to the assessment.  Therefore the officers of the court and Revenue Officer Barbearo knew that they were prohibited from making the application for the sealed order, and prohibited from executing the unlawful search and seizure.

5. The officers of this Court, licensed to practice before this Court, knew at the time the application was made, that Revenue Officer David Barbearo was prohibited from making application for an Order Authorizing Entry Onto Premises to Effect Levy, because the Officers of this Court knew that Revenue Officer David Barbearo had not completed all of the mandatory requirements he was required to complete before making the application for the sealed order, and before making the unlawful search, and unlawful seizure of personal property.

A. "Internal Revenue Service Restructuring and Reform Act of 1998" Part III--Collection Activities, subpart a--approval process, Sec. 3421. <u>Approval process for liens, levies, and seizures, mandated supervisory approval before making application for the court's sealed order, and before executing the seizure</u>.

Revenue Officer David Barbearo must admit that the mandated supervisory approval was not obtained prior to making application for this Court's Sealed Order, and prior to the execution of the seizure.

B. See S. REP. NO. 105-174, at 67 (1998) (explaining the reason for change in section 3401 of the bill).

"The Committee believes that taxpayers are entitled to protections in dealing with the IRS that are similar to those they would have in dealing with any other creditor. Accordingly, the Committee believes that the IRS <u>should afford taxpayers adequate notice of collection activity and a meaningful hearing before the IRS deprives them of their property</u>. . . . The Committee believes that following procedures designed to afford taxpayers due process in collections will increase fairness to taxpayers." Id.

Revenue Officer David Barbearo must admit that the Mr. Rowen and Ms. Su were intentionally deprived of their right as taxpayers of "<u>adequate notice of collection activity and a meaningful hearing before the IRS deprives them of their property</u>." This was admitted in the application for the Sealed Court Order, of the intent to deprive Mr. Rowen and Ms. Su of any notice of the intent to seize their property, until after Barbearo could deprive them of their property.

C. Intentional deprivation of adequate notice of a rights to a pre-seizure hearing, rights to a CDP Hearing and the Notice of Filing a Federal Tax Lien, the Notice of Filing a Levy, and Notice of Intent to Seize the taxpayers' property.

Revenue Officer David Barbearo must admit that Mr. Rowen and Ms. Su were intentionally deprived of adequate notice of intent to seize their property, and deprived of adequate notice of their rights to a hearing, before the seizure of their property. Mr. Rowen and Ms. Su were intentionally deprived of "<u>adequate notice of collection activity and a meaningful hearing, before the IRS deprived them of their property</u>.

<u>The IRS must inform a taxpayer of the availability of a CDP hearing before the seizure.</u>

The CDP provisions provide taxpayers with additional procedural safeguards.[5] Collection actions subject to the CDP provisions include both the filing of an NFTL[6] and levy on the taxpayer's property. Only the person liable for the unpaid tax is given a CDP notice and opportunity for a CDP hearing.[7] Rowen and Su were given notice of intent to levy and availability of CDP, but were not given notice of the intent to seize property.

The IRS must inform a taxpayer of the availability of a CDP hearing within five days after filing a NFTL.[8]   The notice must, in "simple and nontechnical terms," inform the taxpayer of the following: the amount of unpaid tax; the right to request a CDP hearing within thirty days of the beginning of the end of the five-day post-

---

[5] Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3401(b), 112 Stat. 685 (making IRC sections 6320 and 6330 effective for collection actions initiated 180 days after July 22, 1998, i.e., after January 19, 1999); see also Treas. Reg. §§ 301.6320-1(a), 301.6330-1(a) (West 2004). The CDP provisions do not provide procedural safeguards to collection actions initiated before the effective date but subsequently refiled.

[6] Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3401(b), 112 Stat. 685 (making IRC sections 6320 and 6330 effective for collection actions initiated 180 days after July 22, 1998, i.e., after January 19, 1999); see also Treas. Reg. §§ 301.6320-1(a), 301.6330-1(a) (West 2004). The CDP provisions do not provide procedural safeguards to collection actions initiated before the effective date but subsequently refiled.

[7] I.R.C. § 6320(a); Treas. Reg. § 301.6320-1(a)(2), Q&A-A1. Applied to NFTLs, this reading of the notice requirement is reasonable, as it requires that within five days after the filing of a NFTL, a CDP notice must be provided to the "person described in section 6321." I.R.C. § 6320(a)(1). Such person is "the person liable to pay any tax," i.e., the taxpayer. I.R.C. § 6321. This reading is strained with respect to proposed levy actions because the statute provides that "[n]o levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing . . . ." I.R.C. § 6330(a)(1) (emphasis added); see also Book, The New Collection Due Process Taxpayer Rights, supra note 5, at 1140 (stating that third parties may also be entitled to notice and a hearing under section 6330). This is different from the notice requirement relating to NFTL filings. While remedies are available to third parties, it is possible to interpret the meaning of the person to be provided with notice and an opportunity for a CDP hearing in different ways. For instance, a third party may seek an administrative appeal through the Collection Appeal Program, file an action for wrongful levy, or file an action to quiet title. Notice and Opportunity for Hearing Upon Filing of Notice of Lien, 67 Fed. Reg. 2558, 2559 (Jan. 18, 2002) (to be codified at 67 C.F.R. pt. 301); see also I.R.C. § 7426(a) (listing the circumstances where civil actions by persons other than the taxpayer are allowed). This area requires clarification. See Book, The New Collection Due Process Taxpayer Rights, supra note 5, at 1151 (describing the CDP process as a "maze").

[8] I.R.C. § 6320(a)(2). CDP hearing rights do not exist when a lien arises under IRC section 6321, rather it is the filing of a NFTL under IRC section 6323(f) that gives rise to the hearing right. I.R.C. § 6320(a)(1). In 2004, the Treasury Inspector General for Tax Administration (TIGTA) estimated, based on a random sample of 130 CDP cases, that timely lien notices were not sent to taxpayers 4.6% of the time. TREASURY INSPECTOR GEN. FOR TAX ADMIN., U.S. DEP'T OF TREASURY, FISCAL YEAR 2004 STATUTORY REVIEW OF COMPLIANCE WITH LIEN DUE PROCESS PROCEDURES 3 (2004). Failure to timely send the lien notice may reduce the time available for a taxpayer to request a CDP hearing, adversely impacting the taxpayer's rights. Id. at 4.

NFTL filing period; available administrative appeals and applicable procedures; and Internal Revenue Code (IRC) provisions and procedures relating to the release of tax liens. [9]

A similar CDP notice must be given, in "simple and nontechnical terms" before most federal tax levies. [10]   The pre-levy CDP notice must inform the taxpayer of the following: the amount of unpaid tax; the right to request a CDP hearing within thirty days of the notice; the proposed collection action; the IRC provisions, procedures, and administrative appeals relating to levy and sale of property; and alternatives that could prevent levy. [11]   Finally, the notice must explain the IRC provisions and procedures relating to redemptions of property and release of liens. [12]

The CDP provisions require that, if requested, a taxpayer must receive a "fair hearing." [13]   Specifically, IRC sections 6320(b) and 6330(b), relating to liens and levies respectively, require that "[i]f the [taxpayer] requests a hearing . . . such hearing shall be held . . . ." [14]   The regulations contain a similar requirement. [15] In addition, IRC section 6330(e) provides that "if a hearing is requested . . . levy actions which are the subject of the requested hearing . . . shall be suspended for the period during which such hearing, and appeals therein, are pending." [16]   If a CDP hearing is requested, the IRS, through the  Appeals Office, must conduct a hearing and no collection by levy may occur until such hearing (along with any appeals) is concluded.

Revenue Officer David Barbearo must admit that Mr. Rowen and Ms. Su were intentionally deprived of adequate notice of their rights, to deprive them of any opportunity to interfere with Revenue Officer David Barbearo's conspiracy, to unlawfully obtain a Sealed Court Order by perpetrating a fraud on the Court, and unlawfully enter into and open the premises occupied by Ms. Su and Mr. Rowen, and private portions of business property occupied by Ms. Su and Mr. Rowen, and unlawfully seize the personal property of Ms. Su, and property she needed to continue to operate her business, [17] and unlawfully applied the entire property

---

[9] I.R.C. § 6320(a)(3).

[10] I.R.C. § 6330(a)(3). Prior notice of CDP hearing rights is not required before a levy made pursuant to a jeopardy determination or on a state tax refund. However, such notice must be given within a reasonable time after the levy. I.R.C. § 6330(f).

[11] I.R.C. § 6330(a)(3).

[12] I.R.C. § 6330(a)(3)(C)(v).

[13] I.R.C. §§ 6320(b), 6330(b) (West 2004).

[14] I.R.C. §§ 6320(b)(1), 6330(b)(1) (emphasis added).

[15] See Treas. Reg. § 301.6330-1(d)(1) (2002) ("If a taxpayer requests a CDP hearing under section 6330(a)(3)(B) . . ., the CDP hearing will be held with Appeals.").

[16] I.R.C. § 6330(e) (emphasis added). However, the levy may not be suspended if the underlying tax is not at issue and the Secretary shows good cause not to suspend the levy. Id. In practical terms, the levy will be suspended in most instances during appeal even if the underlying liability was not at issue.

[17] The Internal Revenue Service must secure the signature of the Area Manager or Assistant Area Manager prior to seizing tangible business property. It must exhaust all other payment options before seizing the taxpayer's business assets. [IRC § 6334]

MOTION TO VACATE THE COURT'S ORDER OBTAINED BY FRAUD                    PAGE 8 OF 8

seized to Mr. Rowen's pre-marital tax debts, when he knew all of the property belonged to Ms. Su, because it was all premarital property owned by Ms. Su before her marriage to Mr. Rowen, and because of a pre-nup that prevented the community property laws of California from affecting Ms. Su's premarital property rights.

D. The IRS Must Inform Taxpayers of Their Collection Appeal Rights

Revenue Officer David Barbearo must admit that Mr. Rowen and Ms. Su were intentionally deprived of adequate notice of Collection Appeal Rights, to deprive them of any opportunity to interfere with Revenue Officer David Barbearo's conspiracy, to unlawfully obtain a Sealed Court Order by perpetrating a fraud on the Court, and unlawfully enter into and open the premises occupied by Ms. Su and Mr. Rowen, and private portions of business property occupied by Ms. Su and Mr. Rowen, and unlawfully seize the personal property of Ms. Su, and property she needed to continue to operate her business, and unlawfully apply the entire property seized to Mr. Rowen's pre-marital tax debts, when he knew all of the property belonged to Ms. Su, because it was all premarital property owner by Ms. Su before her marriage to Mr. Rowen, and because of a pre-nup that prevented the community property laws of California from affecting Ms. Su's premarital property rights.

Revenue Officer David Barbearo must admit that he knew that he was mandated to timely and adequately inform Ms. Su and Mr. Rowen of their Collection Appeal Rights before unlawfully depriving them of their property and rights to property.

IRM 5.1.9.2  (02-07-2014) Informing Taxpayers of Their Appeal Rights

(1) Taxpayers need to be informed of their right to appeal collection actions. The following publications and forms explaining appeal rights and provisions should be readily available in Collection offices to provide to taxpayers:

    A.  Publication 594, The IRS Collection Process, explains the steps the Service may take to collect overdue taxes and addresses general appeal provisions.

    B.  Publication 1660, Collection Appeal Rights, provides detailed information regarding the collection appeal rights and procedures under Collection Due Process and the Collection Appeals Program.

    C.  Form 9423, Collection Appeal Request.

    D.  Form 12153, Request for a Collection Due Process or Equivalent Hearing.

(2) Revenue Officers need to clearly explain the appeal provisions to taxpayers throughout the collection process and thoroughly answer questions taxpayers may have regarding their right to appeal.

(3) Statutory provisions under IRC § 6320 and IRC § 6330 require the Service to provide taxpayers with written notification of their appeal rights. Refer to IRM 5.1.9.3, Collection Due Process.

(4) Collection personnel are required to advise taxpayers of their right to appeal under CAP when an installment agreement (IA) is rejected, modified or proposed to be modified, or about to be terminated. Collection personnel should also advise taxpayers of their right to appeal under CAP prior to and after levy or seizure or the filing of an NFTL, when the taxpayer disagrees with NFTL filing or levy or seizure action. Refer to IRM 5.1.9.4, Collection Appeals Program.

(5) Collection personnel need to provide taxpayers with Publication 1660 with the Notice of Seizure (Form 2433). Refer to IRM 5.10.3.20(6), Notice of Seizure Form 2433 - Delivery.

Revenue Officer David Barbearo must admit that he included in the application for the Sealed Court Order that was the reason for the Sealed Court Order, it was to prevent Ms. Su and Mr. Rowen from discovering that he was intending to seize their personal property, without notice. This is an admission that he intentionally violated the mandates he was required to comply with, before making the application for the Sealed Court Order, and an admission that he had intentionally failed and refused to comply with the mandates required of him.

6.  The officers of this Court, licensed to practice before this Court, knew at the time the application was made, that Revenue Officer David Barbearo had intentionally withheld, and concealed from the Court, that the "Declaration of Revenue Officer David Barbearo in Support of Amended Application for Order Authorizing Entry onto Premises to Effect Levy ("Barbearo Declaration")" was devised as part of "an unconscionable plan or scheme designed to improperly influence the court in its decisions," that defiled the court and undermined the integrity of the judicial process, and that the Declaration of Revenue Officer David Barbearo in Support of Amended Application for Order

1  Authorizing Entry onto Premises to Effect Levy ("Barbearo Declaration")" contained

2  intentionally false and misleading statements, in violation of prohibitions of federal law.[18]

3       7.   Revenue Officer David Barbearo intentionally withheld, and concealed from

4  this Court, his pattern of intentional violations of IRS mandates and federal laws; that he

5  was identified in pleadings in the Superior Court in Gwinnett County Georgia, the United

6  States District Court for the Northern District of Georgia, the United States District Court

7  for the Northern District Court of California and in the United States Court of Appeals for

8  the Ninth Circuit, as intentionally committing violations of federal criminal statutes, that

9  he was statutorily prohibited from violating, while he attempted to extort money from

10  Soundview Productions, Inc. unlawfully, with the use of counterfeit, or falsely prepared,

11  unauthorized documents, that he knew at the time did not comply with the mandatory

12  requirements, and while unlawfully seizing the funds from the bank account of Lotus

13  Management, LLC, under a similar pretext, including crimes of harassment,[19]  threats,[20]

14  intimidation,[21]  tampering with a witness,[22]  extortion,[23] and obstruction of justice[24]  and

15  these federal crimes that were committed in furtherance of the conspiracy, were the fruit

16  of the conspiracy against the rights,[25] and violation of the rights,[26] of Robert Rowen and

17  Teresa Su, Lotus Management, LLC, and Ronald MacDonald the owner, and against

18  Soundview Productions, Inc. and violated Title 42 U.S.C. 1983 and 42 U.S.C. 1985.

19

20

---

21  [18] 18 USC § 1001.
   [19] 26 U.S. Code § 6304(b); 18 USC § 1514.
   [20] 26 U.S. Code § 6304(b); 42 U.S.C. 1985(2).

22  [21] 26 U.S. Code § 6304(b); 42 U.S.C. 1985(2).
   [22] 18 U.S.C. 1512.

23  [23] 18 USC § 872.
   [24] 18 USC § 1501 – 1521.

24  [25] 18 USC § 241; 42 U.S.C. 1985.
   [26] 18 USC § 242; 42 U.S.C. 1983.

8.  Revenue Officer David Barbearo intentionally withheld, and concealed from this Court, that he was identified in pleadings in the United States District Court for the Northern District Court of California, as intentionally committing federal criminal acts that he was statutorily prohibited from making: when Revenue Officer David Barbearo made unlawful entry into Petitioners place of work (employment),[27]  where he presented his IRS card to person(s) within the office,[28]  handed unsealed confidential tax documents to said person(s),[29]  all in violation of the Fair Debt Collection Act,[30] interrogated those he came into contact with, in an apparent attempt to harass[31]  and to intimidate[32]  the petitioners, and attempt to influence the potential witness (obstruction of justice).[33]  The Petitioners have already provided irrefutable evidence of crimes concerning the unlawful levy of _**unsigned**_ penalties, and attempted subornation of perjury, demanding Petitioners to change/alter tax returns, that were submitted under penalty of perjury, or to face severe consequences. (CAND Case 12-CV-05831 – RS)

9. Revenue Officer David Barbearo intentionally withheld, and concealed from this Court, that when preparing the Declaration of Revenue Officer David Barbearo, in Support of Amended Application for Order Authorizing Entry onto Premises to Effect Levy ("Barbearo Declaration")", that he intentionally provided false statements and he made intentionally misleading statements, in violation of prohibitions of federal law.[34]

Failure to comply with mandatory requirements before making application:

IRS 5.10.1.3  (12-13-2005)  Actions Required Prior to Seizure by IRC 6331(j):

[27] 26 U.S. Code § 6304(a)(2) and (a)(3); RRA 98 § 3502; 42 U.S.C. 1985(2).
[28] 26 U.S. Code § 6304(b); 42 U.S.C. 1985(2).
[29] 26 U.S. Code § 6103; 42 U.S.C. 1985(2).
[30] 26 U.S. Code § 6304(b); RRA 98 § 3466; 42 U.S.C. 1985(2).
[31] 26 U.S. Code § 6304(b); 18 USC § 1514.
[32] 26 U.S. Code § 6304(b); 42 U.S.C. 1985(2).
[33] 18 USC § 1501 – 1521.
[34] 18 USC § 1001.

B. That a jeopardy assessment must be made by the Commissioner before Revenue Officer David Barbearo could be authorized to make the application for the order, enter into and upon the property, effect the levy and search and seize the property identified in the list.

1.  No jeopardy assessment was made by the Commissioner before Revenue Officer David Barbearo made the application for the order, to enter into and upon the property, to effect the levy and search and seize the property identified in the list.

2.  Additionally, Revenue Officer David Barbearo exceeded the items listed in the itemized list and seized additional items that were not listed, exceeding the order that had been granted. No inventory of the items seized was offered at the time of the seizure, and no inventory was left at the property at the time of the seizure. In addition, Robert Rowen and Teresa Su had been told by the supervisor that they would be notified, and provided with an opportunity to inventory all of the property.  Teresa Su served a written request to inspect/inventory all of the property but Revenue Officer David Barbearo responded denying inspection.

3. Intentional False, deceptive and misleading statements made by Revenue Officer David Barbearo:

a. Intentionally falsified information about the book *(They Own It All)*.  The book is not a book about tax avoidance, nor does it offer tax avoidance information. It is a historical book about the end of the gold standard in the USA, and the rise of liened fiat currency (Federal Reserve Notes = Obligations of the United States), and the legal implications of the use of said obligations of the United States, which discharge rather than pay debt.

b. Intentionally withheld that the 2002 penalty(s) referred to were unlawful because they were illegally sent **unsigned**, and the Internal Revenue Service has not been able to locate any person or persons that will admit to sending **unsigned** penalty assessments to the Petitioners.

(1) Penalties referred to in the application were an **unsigned** frivolous filing penalty of $5000 for Robert Rowen's and Teresa Su's 2002 MFJ return which replaced Ms. Su's  original 2002 Married Filing Separately (MFS) income tax return. In that return, she had paid all taxes showing on the return,[35] yet suffered a $5000 **unsigned** frivolous filing penalty. Robert Rowen and Teresa Su each suffered an additional $5,000 **unsigned** penalty for their 2002 MFJ corrected return, when they had **no** tax owing (Ms. Su had paid all taxes with her 2002 MFS return).[36] even though

---

[35] Teresa Su took only three deductions: home mortgage, cost basis of condominium sold and property taxes.
[36] Both **unsigned** frivolous filing penalties were not received until more than three years after filing the returns.

MOTION TO VACATE THE COURT'S ORDER OBTAINED BY FRAUD                    PAGE 13 OF 13

neither 2002 income tax return had ever been submitted for processing, neither of the 2002 income tax returns were ever processed, and no tax liability was ever verified for Teresa Su for the year 2002, which was a mandatory requirement before executing the Levy.

(2) Petitioners provided evidence to the United States District Court for the Northern District of California (CAND Case 12-CV-05831 – RS), from information forwarded to the Petitioners by the IRS on a FOIA request, that Layne Carver (OGDEN OFFICE), who allegedly signed the penalty warning, that the agency had no documents to identify an alleged Layne Carver.  Mr. Rowen sent two letters to this alleged "Layne Carver" requesting explanation as to what was frivolous. Neither letter generated any response.

(3) Pending transactions or adjustments: Both Robert Rowen and Teresa Su had pending amended income tax returns that were not processed. Petitioners  had nothing sent to them by processing, that questioned the time of filing. Those returns are still pending. Ms. Su was actually due a substantial refund. The IRS returned her offer of settlement because her return was being reviewed for processibility. And Processing has never denied the pending returns to this day. Revenue Officer David Barbearo violated mandatory federal mandates when he seized Ms. Su's personal property unlawfully, and not revealing to the court of Honorable Magistrate Judge Cousens, that in this very court (USDC for the Northern District of California), a petition for Writ of Mandamus is pending to compel the IRS to process all of the impending income tax returns which would require a substantial refund inclusive of a casualty loss. There would have been no tax by Ms. Su, This would have prohibited the unlawful application for seizure. Case 12-CV-05831 – RS has been pending for many months. This case directly addressed the failure of the IRS to process several returns, inclusive of the Ms Su's key 2002 MFS and MFJ returns showing no liability, and major casualty loss (2003 1040x MFJ) entitling taxpayers to refunds.

 (4) Litigation: Revenue Officer David Barbearo knew there was litigation that would affect the liability. Barbearo admitted it. Litigation was not only active in the court of the Honorable Judge Seeborg. Litigation was pending in the U.S. Tax Court over the very same issues: that the IRS was refusing to process timely filed returns, inclusive of Ms. Su's 2002 returns showing 3 key deductions indisputably entitled to her as a matter of law. (Income adjustments for cost basis of property sold, home mortgage deduction, and home property tax deduction). The IRS assessed her on a SFR on gross income received while the IRS knew that she had these very significant offsets to taxable income. Barbearo admitted the presence of litigation in front of Robert Rowen and Ron Mac Donald, during the seizure. The litigation challenged the liability of Teresa Su, confirmed she

1
2
3
4

had none, and that she was actually entitled to a refund, if the IRS dutifully processed the income tax returns, as they were required to do. Revenue Officer David Barbearo knew that the litigations alleged fraud, conspiracy and violations of law and that it (the litigation before Judge Seeborg) asked for a Writ of Prohibition to prohibit further unlawful actions against Robert Rowen and Teresa Su by Revenue Officer David Barbearo, and any others that he conspired with.

5   10. The Court's Order, that was the fruit of an intentional fraud perpetrated on

6   this Court by officers of this Court, was used to unlawfully enter into, and upon, the

7   premises of the home occupied by Mr. Rowen and Ms. Su, with armed law enforcement

8   officers, who searched the home and occupied the premises, while the Revenue Officer

9   David Barbearo, and others, conducted searches, and seizures, that exceeded the

10   itemized list of items to be seized.

11   11. The Court's Order, that was the fruit of an intentional fraud perpetrated on

12   this Court by officers of this Court, was also used to unlawfully enter into, and upon, the

13   premises of the medical facility, that contained confidential medical records, of the

14   medical patients receiving treatment for their medical conditions from Mr. Rowen and

15   Ms. Su. The offices were unlawfully invaded by armed law enforcement officers, who

16   searched the medical offices and occupied the premises, while Revenue Officer David

17   Barbearo, and others, conducted searches, and seizures, that exceeded the itemized

18   list of items of items to be seized.

19   12. Only a copy of the Court's Order was left with Mr. Rowen and Ms. Su.  No

20   inventory of seized items was offered to Mr. Rowen and Ms. Su, and no inventory was

21   provided to either of them, or left at the premises of the home or the medical facility at

22   the time of seizure. An inventory was sent a few days later.

23
24

MOTION TO VACATE THE COURT'S ORDER OBTAINED BY FRAUD                    PAGE 15 OF 15

13.  Those documents seized from Ms. Su's medical offices, that are protected under one or more privileges, including doctor-patient privileges, have been, and are being, unlawfully used intentionally by Revenue Officer David Barbearo to harass, threaten, intimidate, interrogate and extort personal information from innocent medical patients, concerning their medical conditions, medical treatments, personal financial records, and personal communications, intentionally violating mandatory prohibitions against David Barbearo's unlawful conduct.[37]

## THE COURT IS URGED TO VACATE THE ORDER OBTAINED BY FRAUD, ORDER RETURN OF EVERYTHING SEIZED AND DERIVED THEREFROM

14. Mr. Rowen and Ms. Su urge the Court to vacate the Court's Order, that was the fruit of an intentional fraud perpetrated on this Court by officers of this Court, as an act in furtherance of the conspiracy by Revenue Officer David Barbearo, and others, devised as "an unconscionable plan or scheme designed to improperly influence the court in its decisions," that defiled the court and undermined the integrity of the judicial process; and direct that everything seized, and everything derived therefrom, with the use of the unlawfully obtained Court's Order, and all copies of everything copied, be immediately surrendered to this Court; order everything be sealed; and prohibit use of anything seized, or anything derived therefrom, by anyone, for any purpose, at any time, at any place; and an order prohibiting Revenue Officer David Barbearo and others from using anything seized, or derived therefrom, from contacting or interrogating anyone, until further order of this Court, after completion of an investigation into the intentional fraud perpetrated on this Court by officers of the Court.

---

[37] 26 U.S.C. 6304 (§ IRC 6304). Policy Statement P-1-1. IRC 6304 prohibits employees from harassing, oppressing, or abusing any person in connection with the collection of any unpaid tax. "The Secretary may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any unpaid tax."

1

## THE COURT'S ORDER WAS THE FRUIT OF AN INTENTIONAL FRAUD

2     14.  Revenue Officer David Barbearo, who admitted he was an attorney, made

3 application for the Court's order, and as an officer of the Court, was required to disclose

4 to the Court that the application, and Declaration of Revenue Officer David Barbearo,

5 was intended as "an unconscionable plan or scheme designed to improperly influence

6 the court in its decisions," and obtain the Court's order, as fruits of an intentional fraud

7 perpetrated on this Court, by officers of the Court, in continuation of David Barbearo's

8 intentional pattern of unlawful behavior, and which made this Court a party to the fraud.

9     15.  Courts possess the inherent power to vacate or amend a judgment obtained

10 by fraud on the court, *Toscano v. CIR*, 441 F.2d 930, 933 (9th Cir. 1971), but that power

11 is narrowly construed, applying only to fraud that defiles the court, or is perpetrated by

12 officers of the court.

13     16.  When, as in this case, the integrity of the judicial process has been harmed,

14 by "an unconscionable plan or scheme which is designed to improperly influence the

15 court in its decisions," the Court not only could act, but should act. *England*, 281 F.2d at

16 309; *Levander v. Prober*, 180 F.3d 1114, 1119 (9th Cir. 1999); *Intermagnetics Am., Inc.*

17 *v. China Int'l Trust and Inv. Corp.*, 926 F.2d 912, 916-17 (9th Cir. 1991).

18     17. To allow a judgment or order, obtained as the fruit of an intentional fraud that

19 defiles the court, to stand, when it is has been challenged by proper motion, makes this

20 Court a party to the injustice, making the Court a party to the crime, or at least makes

21 the Court an accomplice to the crime, and brings discredit to the whole judicial system.

22     18. Prejudice is not an element of fraud on the court. *Hazel-Atlas*, 322 U.S. at

23 238; *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1132-33 (9th Cir. 1995).

24

1    Fraud on the court occurs when the misconduct harms the integrity of the judicial

2    process, regardless of whether the opposing party is prejudiced. *Alexander v.*

3    *Robertson*, 882 F.2d 421, 424 (9th Cir. 1989). <u>Furthermore, the perpetrator of the fraud</u>

4    <u>should not be allowed to dispute the effectiveness of the fraud after the fact.</u> *Hazel*

5    *Atlas*, 322 U.S. at 247; *Pumphrey*, 62 F.3d at 1133.

6                 DAVID BARBEARO'S INTENTIONAL DECEPTION IS PROVEN
                 THROUGH HIS OWN STATEMENTS DURING THE SEIZURE

7
8        19.  Revenue Officer David Barbearo stated to the Petitioners during execution of

9    the Court's order that 1) the action at the house was Revenue Officer David Barbearo's

10   sole responsibility; 2) the decision was Revenue Officer David Barbearo's alone; 3) the

11   action was Revenue Officer David Barbearo's alone; 4) he and only he was responsible,

12   Revenue Officer David Barbearo himself; 5) Revenue Officer David Barbearo stated he

13   was the one in charge, and the only one in charge, although one female was introduced

14   as his supervisor.

15       20. Revenue Officer David Barbearo admitted Ms. Su's innocent spouse claims,

16   that she would be an innocent spouse with regards to Robert Rowen's income tax

17   liability from the 1990 series of tax liabilities, after Revenue Officer David Barbearo

18   received a letter from Ms. Su about her innocent spouse claims and removed her name

19   from the lien Barbearo filed on her for the 1990 series of Robert Rowen's taxes. But

20   Revenue Officer David Barbearo's intentional misrepresentations in the application

21   implied that Teresa Su was liable for Robert Rowen's income tax liability from the 1990

22   series of tax liabilities.

23

24
     MOTION TO VACATE THE COURT'S ORDER OBTAINED BY FRAUD          PAGE 18 OF 18

21. Revenue Officer David Barbearo knew, at the time the application was made, that the Petitioners had repeatedly sent personal correspondence to the CDPH officers regarding the litigation, requesting a stay of everything until the litigation was complete.

22. Revenue Officer David Barbearo knew, at the time the application was made, that mandatory provisions in IRS 5.10.1.1  (12-13-2005)  mandated *"the revenue officer must follow all legal and procedural guidelines"* which Revenue Officer David Barbearo knew he intentionally failed or refused to do.

23. Revenue Officer David Barbearo knew that he intentionally failed or refused to follow the mandates prohibiting seizure, under IRS 5.10.1.2  (12-13-2005)  List of Prohibited Seizures; The following types of seizures are prohibited in light of restrictions in the Internal Revenue Code (IRC):

> "Seizures where the taxpayer has insufficient equity in the property - there must be sufficient net proceeds from the sale to provide funds to apply to the taxpayer's unpaid tax liabilities"

Revenue Officer David Barbearo knew that he intentionally failed or refused to determine the equity that either taxpayer had in the items he seized before making the application for the Court's order and executing the seizure.

Revenue Officer David Barbearo knew, at the time the application was made, that Ms. Su's 2002 tax return was being evaluated for processing (and the IRS was conducting investigation on the IRS's SFR) which processing would eliminate any tax liability alleged against her for 2002..[38]

---

[38] Prior to conducting a seizure, the revenue officer must review the list of prohibited seizures to ensure the case does not meet any of these conditions. The case history should be documented to reflect that the revenue officer reviewed the list of prohibited seizures and that no prohibition against seizure exists.

24. Revenue Officer David Barbearo knew that Robert Rowen had not received the assets from the Quantum Health Trust that the 1990's tax liabilities were imposed for. However, the IRS has never responded to Robert Rowen's allegation (before this court in 3-13-cv-05831-RS) that he had never received the assets from the trust. Mr. Rowen already submitted records of property transactions showing that former IRS Revenue Officer Frank Avezac transacted on QHT and Robert Rowen was not a party or recipient of the proceeds. This provided proof that the conspiracy to defraud Robert Rowen began in the 1990s and is continuing to this day. The absence of any response to the allegations is an implied admission that they knew that Robert Rowen did not receive the assets from the trust, that the assets were embezzled by former Revenue Officer Frank Avezac, and the tax imposed on the embezeled assets were unlawfully enforced against Mr. Rowen.

25. The United States attorneys who prepared the documents for this case knew that there was pending litigation in the court of Judge Seeborg. U.S. Attorney Melinda Haag was duly served. That these attorneys would prepare paperwork based on the fraudulent declaration of Revenue Officer Barbearo, and conceal from this court that pending litigation, gives the appearance of conspiracy to deprive Mr. Rowen and Ms. Su of their rights in violation of Title 42 §§ 1983 and 1985.

WHEREFORE, for the above and foregoing reasons Mr. Rowen and Ms. Su urge the Court to grant their Motion to Vacate the Court's Order Obtained by Fraud that was Perpetrated on this Court by Officers of this Court, devised as "an unconscionable plan or scheme designed to improperly influence the court in its decisions," that defiled the court and undermined the integrity of the judicial process; direct that everything seized,

1  and everything derived therefrom, be immediately surrendered to this Court; order that

2  everything be sealed; and an order prohibiting Revenue Officer David Barbearo and all

3  others from using anything seized, or derived therefrom, from contacting or interrogating

4  anyone, until further order of this Court, after completion of an investigation into the

5  intentional fraud perpetrated on this Court by officers of the Court.

6         Respectfully submitted this 16th day of June, 2014.

7

8         TERESA SU, Petitioner       ROBERT ROWEN, Petitioner

9         _____Teresa Su /s/_____     _____Robert Rowen /s/_____

10         Teresa Su, pro se       Robert Rowen, pro se

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

## CERTIFICATE OF SERVICE

2

       I certify that a true and correct copy of the foregoing document was served upon the appropriate parties by serving a copy thereof by email  to the parties at the email

3

address listed below:

4

MELINDA HAAG (CAIN 132612)
United States Attorney

5

THOMAS MOORE (ALBN 4305-078T)
Chief, Tax Division

6

MICHAEL G. PITIVMAN(DCBN 484164)
Assistant United States Attorney, Tax Division

7

450 Golden Gate Ave., Box 36055
San Francisco, C.A. 94102

8

Telephone:    (415) 436-6475
Facsimile:     (415) 436-7009

9

michael.pitman@usdoj.gov

10

Attorneys for the United States

11

on this 16th day of June, 2014.

12

Signed:   ___Robert Rowen /s/_____

13

14

15

16

17

18

19

20

21

22

23

24

1

2

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

3

In the Matter of the Tax Indebtedness of   :   Case No. CV 14-80-086 MISC
:
4   Robert Rowen and Teresa  Su,                    :
        *Business Address*:                               :
5       2200 County Center Drive                    :
        Santa Rosa, CA 95403                         :                [PROPOSED] ORDER
6                                                               :
        *Home Address:*                                  :
7       7048 E. Hurlbut Ave.                          :
        Sebastopol, CA 95472                        :
8                                                               :
Ex Parte UNITED STATES OF AMERICA :
9   and Revenue Officer DAVID BARBEARO, :
                                                                :
10         Applicants for Order.                        :
                                                                :
11   _____ :

12         This matter came before the Court on Mr. Rowen's and Ms. Su's Motion to

13   Vacate the Court's Order Obtained by Fraud Perpetrated on this Court by Officers of

14   this Court, and it appearing good cause has been shown, it is Hereby Ordered that the

15   Motion is GRANTED.

16         It is further Ordered that everything seized, and everything derived therefrom, be

17   immediately surrendered to this Court; ordered that everything be sealed; and an order

18   prohibiting Revenue Officer David Barbearo, and all others, from using anything seized,

19   or derived therefrom, from contacting or interrogating anyone, until further order of this

20   Court, after completion of an investigation into the intentional fraud perpetrated on this

21   Court by officers of the Court.           IT IS SO ORDERED

22

23   _____                    _____
     Dated                                          THE HONORABLE _____
24                                                    UNITED STATES DISTRICT COURT  JUDGE

MOTION TO VACATE THE COURT'S ORDER OBTAINED BY FRAUD                    PAGE 23 OF 23

1   **CERTIFICATE OF SERVICE**

2         I certify that a true and correct copy of the foregoing document was served upon the appropriate parties by serving a copy thereof by email to the parties at the email

3   address listed below:

4   MELINDA HAAG (CAIN 132612)
    United States Attorney

5   THOMAS MOORE (ALBN 4305-078T)
    Chief, Tax Division

6   MICHAEL G. PITIVMAN(DCBN 484164)
    Assistant United States Attorney, Tax Division

7   450 Golden Gate Ave., Box 36055
    San Francisco, C.A. 94102

8   Telephone:   (415) 436-6475
    Facsimile:    (415) 436-7009

9   michael.pitman@usdoj.gov

10  Attorneys for the United States

11  on this 24th day of March, 2014.

12  Signed:   ____Robert Rowen /s/_____

13

14

15

16

17

18

19

20

21

22

23

24